## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| YOLANDER HART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case no.  25-1478 |
| | ) | |
| VILLAGE OF CASEYVILLE, ILLINOIS, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| TRAVIS HOGUET | ) | |
| Caseyville Police Officer | ) | |
| in his Individual Capacity, | ) | |
| | ) | |
| PHILIP FERNANDEZ | ) | |
| Caseyville Police Officer | ) | |
| in his Individual Capacity, | ) | |
| | ) | |
| ANDY REEL | ) | |
| Caseyville Police Officer | ) | |
| in his Individual Capacity, | ) | |
| | ) | |
| WOODROW HALL | ) | |
| Caseyville Police Officer | ) | |
| in his Individual Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT PURSUANT TO 42 U.S.C. § 1983
## FOR VIOLATION OF CIVIL RIGHTS PROTECTED BY THE
## FIRST, FOURTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
## CONSTITUTION

### Preliminary Statement

1.    This is a civil action under 42 U.S.C. § 1983 in which Plaintiff Yolander Hart seeks relief for violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and by the United States Constitution, including the First, Fourth, and Fourteenth Amendments. Hart, a mother, active in the community, with no criminal history, was watching police harass and mistreat her son in public. She was peacefully and lawfully

1

exercising her First Amendment rights. In retaliation for her peaceful presence and protected speech, Caseyville police officer Travis Hoguet forcefully and unnecessarily pulled Hart out of her vehicle, placed her in handcuffs, jailed her, and caused her to be wrongfully charged with obstruction. The State later dismissed all charges at her first court appearance. The actions by the Individual Defendants were not isolated incidents, but instead stemmed from the Village of Caseyville's longstanding and deliberately indifferent policies, customs, and failure to properly train and supervise its officers.

### Jurisdiction

2. The rights this action seeks to vindicate are secured by the Constitution of the United States and 42 U.S.C. § 1983. This Court has jurisdiction as provided by 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), this being an action for damages seeking redress of Hart's constitutional rights.

### Venue

3. All Defendants are located in the geographical boundaries of the Southern District of Illinois, and all events set forth herein are located in the same. Therefore, venue is appropriate in the Southern District of Illinois, as provided by 28 U.S.C. § 1391(a) and (b).

### Jury Trial Demanded

4. Hart demands a jury trial for all claims pleaded herein.

### Parties

5. Yolander Hart ("Hart") is a citizen of the United States of America and the State of Missouri and a resident of St. Louis County, Missouri. Hart formerly was a resident of

2

Belleville, Illinois, and was a resident there at all relevant times to the events described in this Complaint.

6. Defendant Village of Caseyville, Illinois ("Caseyville") is a governmental entity operating pursuant to the laws of the State of Illinois, capable of being sued.

7. At all relevant times, Defendant Police Sergeant Travis Hoguet ("Hoguet") was a Caseyville, Illinois police officer and acting in the course and scope of his employment therein and under color of state law. Hoguet is sued solely in his individual capacity.

8. At all relevant times, Defendant Police Officer Philip Fernandez ("Fernandez") was a Caseyville, Illinois police officer and acting in the course and scope of his employment therein and under color of state law. Fernandez is sued solely in his individual capacity.

9. At all relevant times, Defendant Police Officer Andy Reel ("Reel") was a Caseyville, Illinois police officer and acting in the course and scope of his employment therein and under color of state law. Reel is sued solely in his individual capacity.

10. At all relevant times, Defendant Chief of Police Woodrow Hall ("Hall") was a Caseyville, Illinois police officer and acting in the course and scope of his employment therein and under color of state law. Hall is sued solely in his individual capacity.

**Facts**

11. On July 25, 2023, at around noon, Plaintiff Yolander Hart was driving a red 2017 Buick Cascada down West Lincoln Avenue in Caseyville, Illinois. She was following behind her son, William Travis ("Travis"), who had just retrieved his red 2019 Buick Encore from the tow lot following a prior impoundment by Caseyville police.

12. Hart's nephew, Derrick Branch ("nephew"), was riding in the front passenger seat of her vehicle. All three had just left Triple J Towing after paying $500 to release Travis's vehicle.

13. Triple J Towing, Inc., based in Caseyville, Illinois, has a relationship with Caseyville Police Department and works in tandem with officers to tow and impound vehicles.

14. Before they left the tow lot, Hart accompanied her son inside the Triple J Towing lobby to assist him in retrieving his vehicle. While inside, Caseyville police officer Hoguet entered the lobby, audibly referred to her son as "carjacker," smiled, had a private conversation with another Caseyville police officer Fernandez, causing that officer to exit the lobby and go towards the tow lot, with Hoguet leaving the lobby shortly thereafter.

15. Witnessing this, Hart felt an instinctive sense that something was off and that the officers were watching her son and might attempt to follow or target him as soon as they left the premises. She decided to follow closely behind her son's car to make sure he got home safely.

16. As soon as Hart and her son, each in their individual cars, drove off the tow lot going westbound to head back home, Hart observed a Caseyville police patrol vehicle driven by Fernandez begin to follow her son's car.

17. Within seconds, Hart realized that Fernandez was not alone, but was accompanied by other police cruisers who were trailing both Travis and Hart.

18. After about a half mile of driving, Hart observed Fernandez signal to her son to pull over near the intersection of South 5th Street and West Lincoln Avenue at approximately 12:43 PM. Her son complied and pulled over to the side of the road.

4

19.  Concerned for her son's safety and confused as to why police officers, some of whom were just with them in the lobby of Triple J Towing, were pulling her son over, Hart pulled her vehicle over behind the traffic stop to observe the interaction between the police and her son. However, another Caseyville police vehicle, driven by Hoguet, pulled in front of Hart's car, blocking her view of her son and the stop.

20.  In response, Hart maneuvered her vehicle across the street and parked on the opposite side of Lincoln Avenue, a public road, in order to maintain a clear and unobstructed view of her son, without interfering with the police stop.

21.  Hart was parked on the side of the road, in a non-disruptive manner, and was engaged only in observation. Her presence posed no threat or interference to officers or any member of the public.

22.  Within seconds of her repositioning, Hoguet aggressively approached Hart's car. He immediately threatened her with arrest if she did not drive off and leave the area.

23.  Hart asked why her son was being pulled over. Hoguet responded that her son had a suspended license. Hart attempted to explain that they had just retrieved the vehicle from the tow lot and that Travis had been released from jail less than an hour earlier.

24.  Hoguet stated she had ten seconds to leave or be arrested. For their safety, Hart and Branch were both filming the encounter on their phones.

25.  Hart pleaded with Hoguet, explaining her fear for her son's safety, and stating aloud her fear that "They want to beat him up."

26.  Hoguet escalated the encounter. Without cause, he opened the driver-side door of Hart's vehicle, snatched her phone from her hand while she was recording, unclipped her seatbelt, and grabbed her by the arm.

5

27. As Hoguet was pulling Hart out of her vehicle, Hart had her hands raised in a clear demonstration of non-resistance and she was praying to God out loud. As she was praying, Hoguet shouted: "Get out of the car or you'll get tased!" and pointed his taser at her body point-blank.

28. Hart was compliant in getting out of the vehicle.

29. Hoguet immediately handcuffed Hart and placed her in the back of Reel's patrol car.

30. Hart remained compliant throughout the entire encounter. At no time did she threaten officers, disobey orders, or engage in obstruction under any reasonable definition of law.

31. After placing Hart under arrest, Caseyville officers searched her vehicle without a warrant or probable cause. They also searched her nephew and told him he was free to go.

32. No weapons, contraband, or illegal items were found on Hart, her nephew, or her son.

33. Chief Hall was on the scene, aware of the arrests, and did not intervene.

34. Officers transported Hart and her son to the Caseyville Police Department for booking.

35. At the police station, Fernandez could not get his citation printer to work, so Hart and her son were told they were free to leave and that citations would be mailed to them.

36. Hart and her son went back to Triple J Towing and paid $500 per car in order to get possession of their vehicles.

37. In the mail, Hart received a citation for "obstruction," though she was never told which specific act constituted the alleged crime. Hart's son received citations for numerous traffic offenses.

38. Hart's charge of "obstruction" was dropped by the prosecuting attorney on the very first court date.

39. The initial seizures and subsequent arrests of both Hart and her son were pretextual detentions, used to justify unconstitutional targeting, harassment, and conspiracy to violate their civil rights, specifically, the rights to be free from unreasonable search and seizure, excessive force, malicious prosecution, and the failure to intervene in unconstitutional conduct.

40. For several years, officers employed by the Village of Caseyville, Illinois have engaged in a pattern and practice of retaliating against individuals who observe or record police conduct in public, particularly during traffic stops, by unlawfully ordering them to leave, threatening arrest without justification, and detaining or charging them under vague or pretextual ordinances such as "obstruction."

41. The Village's police officers, including Sergeant Hoguet and Officer Reel, routinely use fabricated or exaggerated justifications, such as supposed "interference," "disorderly conduct," or "obstruction," as a means to silence, intimidate, and retaliate against citizens engaging in constitutionally protected First Amendment activity, including filming and monitoring police actions from a safe distance.

42. It is a longstanding custom of the Caseyville Police Department to conduct arrests and seizures without probable cause, particularly in response to individuals who challenge, question, or record officers in public.

43. The Village's officers have also engaged in repeated warrantless vehicle searches and retaliatory tows without lawful justification, especially during or following encounters that involve public scrutiny, citizen complaints, or filming of officers.

44. The Village of Caseyville has failed to adopt, implement, or enforce policies or training that instruct officers on the constitutional rights of civilians to observe and record police conduct, or to ensure that officers understand the narrow scope of laws such as "obstruction" or "resisting" as applied to peaceful bystanders.

45. The Village has likewise failed to discipline or retrain officers like Hoguet who have repeatedly used force, threats, or unlawful arrest to punish civilian oversight or dissent, despite being aware of citizen complaints, patterns of litigation, and public scrutiny related to these behaviors.

46. As a result of these unlawful customs, policies, and widespread practices, Plaintiff Yolander Hart, while peacefully observing her son's traffic stop from a public location and recording police conduct, was unlawfully seized, pulled from her vehicle, arrested without probable cause, handcuffed, and jailed. Her vehicle was then searched without a warrant or basis for suspicion.

47. These actions caused Plaintiff physical and emotional harm, financial damages, and violated her clearly established constitutional rights under the First, Fourth, and Fourteenth Amendments.

48. The conduct described above was carried out pursuant to the de facto policies and widespread practices of the Village of Caseyville, including but not limited to:

   a. Retaliating against individuals who observe, question, or record police activity;

   b. Arresting civilians under vague or baseless claims of "obstruction" to suppress lawful First Amendment activity;

   c. Conducting vehicle searches and seizures without warrants or lawful justification;

d.  Failing to train, supervise, or discipline officers with histories of using force or arrest power to retaliate against citizens engaged in protected speech.

49.  The Village of Caseyville, through its Chief of Police, Mayor, Board of Trustees, and other officials with final policymaking authority, has long been aware of these unconstitutional customs and practices, yet has deliberately failed to remedy or reform them.

50.  Pleading in the alternative, the Village of Caseyville has failed to provide any meaningful training or supervision to its officers concerning:

a.  The right of citizens to record and observe police conduct in public;

b.  The legal limits of the "obstruction" ordinance;

c.  The constitutional restrictions on arresting individuals without probable cause;

d.  The proper use of police discretion when faced with public scrutiny.

51.  These unconstitutional policies, practices, and failures to train or supervise were the moving force behind the constitutional violations suffered by Plaintiff Yolander Hart and were a direct and proximate cause of her injuries.

**COUNT 1**

**RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS TO OBSERVE, SPEAK TO, AND FILM LAW ENFORCEMENT IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
***Against Defendant Travis Hoguet***
***In his Individual Capacity***

52.  On July 25, 2023, Hart was engaged in First Amendment-protected activity, namely, exercising her rights to observe and record police officers who had detained her son in a public place, and verbally expressing concern for her son's safety.

9

53. These protected First-Amendment activities, including observing, questioning, and recording police activity in public, were clearly established rights at the time of this incident.

54. As a result of this activity, and in retaliation for the activities, Defendant Hoguet intentionally threatened her with arrest, seized her phone, forcibly removed her from her vehicle, placed her under arrest, and conspired together to charge her with a crime.

55. There was no probable cause, warrant, or reasonable suspicion to support Hart's initial seizure and subsequent arrest and charging.

56. The Defendant's actions were substantially motivated by Plaintiff's exercise of her First Amendment rights, including her filming of police conduct and verbal inquiries.

57. The retaliatory actions of the Defendant would be likely to deter and chill a person of ordinary firmness in Plaintiff's position from engaging in such First Amendment-protected activities.

58. As a proximate and direct result of the Defendant's misconduct, Hart suffered, and in some cases continues to suffer, the following damages: deprivation of her constitutional rights entitling her to at least nominal damages, mental trauma, humiliation, degradation, public ridicule, loss of personal reputation, emotional distress, loss of property and money, fear of future retaliation for engaging in First Amendment activities, and embarrassment.

59. The Defendant acted intentionally and was motivated by evil motive and intent, his actions were wanton, malicious, and oppressive, and he acted with reckless and callous indifference to Hart's civil rights, therefore entitling Hart to an award of punitive damages against the Defendant.

60. If Hart prevails, she is entitled to recover attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Hart prays for judgment against Defendant Hoguet for nominal damages, actual damages in an amount that is fair and just, punitive damages, and attorney's fees, together with her costs, and for such further relief that this Honorable Court deems just and proper under the circumstances.

**COUNT 2**

**UNLAWFUL *TERRY* STOP IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
***Against Defendant Travis Hoguet***
***in his Individual Capacity***

61. On July 25, 2023, Plaintiff and her nephew were driving home behind her son in a separate vehicle after having just helped him retrieve his owned and previously towed vehicle from Triple J Towing.

62. When her son was pulled over by Fernandez on their drive home, Hart, fearing for her son's safety, lawfully parked on a public roadway across the street in order to observe the stop from a safe and non-interfering distance.

63. Hart committed no traffic violation, criminal offense, or act that would give rise to any reasonable suspicion that she was engaged in unlawful activity.

64. Defendant Hoguet, acting under the color of state law, and with no legal basis to do so, threateningly approached the Plaintiff and declared that if she did not leave, she would go to jail.

65. Plaintiff told Hoguet that she was afraid for son's safety and questioned the reason for the stop.

66. Defendant then escalated the encounter without cause or explanation by opening her door, snatching her phone, unclipping her seatbelt, and pulling her out of the vehicle by her arm before placing her in handcuffs and in the back of a police cruiser.

67. The stop was not supported by reasonable suspicion or probable cause. The justification of "obstruction" was pretextual and not the true reason for initiating the stop.

68. Plaintiff posed no threat to officer safety and was simply trying to ensure her son got home safe.

69. Defendant Hoguet lacked any particularized, articulable facts that would justify a reasonable belief that unlawful activity was afoot other than his own retaliatory purposes.

70. Defendant unreasonably escalated Plaintiff's observation of her son into an unlawful arrest, despite the absence of any legal basis.

71. The stop and seizure of Plaintiff constituted an unlawful *Terry* stop in violation of Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments, and actionable under 42 U.S.C. § 1983.

72. As a direct and proximate result of the unlawful seizure, Plaintiff suffered the loss of liberty, emotional distress, humiliation, economic harm, and fear of further retaliation.

73. The Defendant acted intentionally and was motivated by evil motive and intent, his actions were wanton, malicious, and oppressive, and he acted with reckless and callous indifference to Hart's civil rights, therefore entitling Hart to an award of punitive damages against the Defendant.

74. If Hart prevails, she is entitled to recover attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Hart prays for judgment against Defendant Hoguet for nominal damages, actual damages in an amount that is fair and just, punitive damages, and attorney's fees, together with her costs, and for such further relief that this Honorable Court deems just and proper under the circumstances.

**COUNT 3**

**UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
***Against Defendant Travis Hoguet***
***In his Individual Capacity***

75. On July 25, 2023, Defendant Hoguet, acting under color of state law, arrested Hart without a warrant, probable cause, or any lawful justification.

76. Hart had not committed any criminal offense, nor was she interfering with police duties or violating any law at the time of the arrest.

77. The arrest was not supported by any objectively reasonable basis to believe that Hart had engaged in criminal conduct.

78. The arrest violated clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution.

79. As a direct and proximate result of this unlawful arrest, Hart suffered damages, including deprivation of her liberty, mental trauma, emotional distress, reputational harm, and financial loss.

80. Defendant Hoguet acted intentionally, maliciously, and with reckless disregard for Hart's rights, entitling her to punitive damages.

81. If Hart prevails, she is entitled to recover attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Hart prays for judgment against Defendant Hoguet for nominal damages, actual damages in an amount that is fair and just, punitive damages, attorney's fees, and such other relief as this Court deems just and proper.

**COUNT 4**

**UNLAWFUL SEIZURE AND SEARCH OF VEHICLE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
*Against Defendants Travis Hoguet and Andy Reel*
*In their Individual Capacities*

82. On July 25, 2023, following Hart's unlawful arrest, Defendants Hoguet and Reel, acting under color of state law, conducted a warrantless search and seizure of Hart's vehicle.

83. The search and seizure were done without probable cause, exigent circumstances, or consent, and in the absence of any lawful justification.

84. At the time of the search, Hart's vehicle was not involved in any criminal activity.

85. The search and seizure of Hart's vehicle were objectively unreasonable and in violation of clearly established Fourth and Fourteenth Amendment rights.

86. As a direct and proximate result, Hart suffered emotional distress, loss of property use, and constitutional injury.

87. Defendants acted with reckless and callous indifference to Hart's rights, warranting punitive damages.

88. If Hart prevails, she is entitled to recover attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Hart prays for judgment against Defendants Hoguet and Reel for nominal damages, actual damages in an amount that is fair and just, punitive damages, attorney's fees, and such further relief as this Honorable Court deems just and proper.

### COUNT 5

**EXCESSIVE FORCE DURING UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
*Against Defendant Travis Hoguet*
*In his Individual Capacity*

89. On July 25, 2023, Hart was forcibly pulled from her vehicle by Defendant Hoguet, acting under color of state law, without justification or provocation.

90. At all times, Hart was non-threatening, compliant, and posed no risk to officers or public safety.

91. Defendant Hoguet escalated the situation by threatening to use a taser and pointing it at her point-blank, seizing Hart's phone, and violently removing her from her car while she was praying aloud and not resisting.

92. The level of force used was objectively unreasonable in light of the circumstances.

93. Defendant Hoguet's conduct violated clearly established rights under the Fourth and Fourteenth Amendments.

94. As a direct and proximate result, Hart suffered emotional distress, psychological trauma, and physical injury.

95. The Defendant's actions were malicious and demonstrated deliberate indifference to Hart's constitutional rights, entitling her to punitive damages.

96. If Hart prevails, she is entitled to attorney's fees and costs under 42 U.S.C. § 1988.

**WHEREFORE**, Hart prays for judgment against Defendant Hoguet for nominal damages, actual damages in an amount that is fair and just, punitive damages, attorney's fees, and such further relief that this Honorable Court deems just and proper.

**COUNT 6**

**MALICIOUS PROSECUTION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
***Against All Individual Defendants***
***In their Individual Capacities***

97. On July 25, 2023, the Individual Defendants, all acting under color of state law, initiated criminal charges against Plaintiff Yolander Hart.

98. Defendant Travis Hoguet falsely accusing Hart of obstruction, despite having no probable cause and no evidence of criminal conduct.

99. Defendant Philip Fernandez assisted in detaining Hart, supported the arrest by remaining on scene, and failed to prevent the unlawful initiation of charges, despite having knowledge of Hart's peaceful conduct.

100. Defendant Andy Reel transported Hart in his patrol vehicle after the arrest, endorsed the arrest by assisting in its execution and failing to intervene, and remained complicit in the submission of false or misleading information to justify the charges.

101. Defendant Woodrow Hall, the supervising officer and Chief of Police, was present at the scene and aware of the arrest and charging of Hart. He failed to intervene or direct his subordinates to cease the prosecution, thereby ratifying and encouraging the baseless charge.

16

102. Defendants caused, or continued, the criminal prosecution of Hart by preparing, approving, or failing to correct false statements in police reports, and by submitting those reports to the prosecuting authority.

103. Hart was not told what specific act constituted obstruction, and the reports omitted exculpatory details that would have made clear the baseless nature of the charge.

104. The obstruction charge was dismissed in Hart's favor at her first court appearance.

105. Defendants' conduct was motivated by retaliatory animus, and their actions in causing or continuing the prosecution were taken with malice or reckless disregard for Hart's rights.

106. The criminal prosecution initiated by Defendants violated Hart's clearly established rights under the Fourth and Fourteenth Amendments to be free from prosecution without probable cause and based on false or retaliatory motives.

107. As a direct and proximate result of this malicious prosecution, Hart suffered reputational harm, emotional distress, mental anguish, public humiliation, legal expenses, and other damages.

108. Defendants acted intentionally and with deliberate indifference to Plaintiff's constitutional rights. Their actions were taken with malice and reckless disregard, entitling Plaintiff to an award of punitive damages.

109. If Hart prevails, she is entitled to recover attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff Yolander Hart respectfully requests that this Court enter judgment in her favor and against Defendants Hoguet, Fernandez, Reel, and Hall in their

17

individual capacities, for actual damages, punitive damages, nominal damages, attorney's fees, costs, and all such other relief as this Court deems just and proper.

**COUNT 7**

**CONSPIRACY TO VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
*Against All Individual Defendants*
*In their Individual Capacities*

110. On July 25, 2023, Defendants Travis Hoguet, Philip Fernandez, Andy Reel, and Woodrow Hall knowingly and willfully conspired together, forming a mutual understanding to violate Plaintiff Yolander Hart's constitutional rights under the Fourth and Fourteenth Amendments.

111. This conspiracy included an agreement, tacit or explicit, to unlawfully seize, arrest, and prosecute Hart in retaliation for observing and recording her son's traffic stop and for remaining present in a public space.

112. Defendant Hoguet initiated the conspiracy by entering the tow lot lobby, calling William Travis a "carjacker," and whispering instructions to Defendant Fernandez, who then exited toward the lot and began surveillance of the Travis vehicle.

113. After Travis and Hart drove off of the tow lot, Defendants Fernandez and Reel coordinated their patrol units to trail the two vehicles, positioning themselves to execute a stop without lawful justification. Defendant Hall was aware of these actions as the supervising officer.

114. Defendants executed a pretextual traffic stop on William Travis and obstructed his mother's line of sight. When Hart repositioned her car to lawfully observe, Hoguet aggressively approached and threatened her with arrest without legal basis.

115. Defendants Hoguet, Fernandez, and Reel jointly contributed to Hart's seizure, removal from her vehicle, arrest, and detention. Defendant Reel physically transported her, while Hall observed the events unfold and failed to intervene or curtail the conduct of his subordinates.

116. Defendants then caused or supported the filing of obstruction charges against Hart, based on false or grossly exaggerated claims, knowing there was no probable cause and with the shared intent of chilling her protected activity and concealing their misconduct.

117. Each Defendant took one or more overt acts in furtherance of the unlawful conspiracy, including:

   a. Hoguet initiated the plan, seized and arrested Hart, fabricated justifications;

   b. Fernandez participated in the surveillance and stop, supported the arrest and failed to intervene;

   c. Reel assisted in the detention, transport, and criminal processing of Hart;

   d. Hall was present during and after the arrest, failed to intervene, and approved the actions of subordinates through deliberate inaction.

118. The conspiracy between Defendants was the direct cause of the unlawful seizure and arrest of Hart, the illegal search of her vehicle, and her malicious prosecution.

119. These acts were performed under color of state law and in violation of Hart's clearly established constitutional rights under the Fourth and Fourteenth Amendments, including her right to be free from unlawful seizure, arrest, and prosecution without probable cause.

120. As a proximate and direct result of the Defendants' concerted conduct, Plaintiff suffered deprivation of liberty, emotional distress, reputational harm, humiliation, fear, and economic damages.

121. Defendants acted intentionally, maliciously, and with deliberate indifference to Plaintiff's civil rights. Their actions were wanton, oppressive, and carried out with callous disregard for the law, entitling Hart to punitive damages.

122. If Hart prevails, she is entitled to recover reasonable attorney's fees and costs under 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Yolander Hart respectfully requests judgment against Defendants Hoguet, Fernandez, Reel, and Hall in their individual capacities for compensatory damages, punitive damages, nominal damages, attorney's fees, costs, and all such other relief as this Court deems just and proper.

## COUNT 8

**FAILURE TO INTERVENE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
*Against Defendants Andy Reel and Woodrow Hall*
*In Their Individual Capacities*

123. At all relevant times on July 25, 2023, Defendants Reel and Hall were present on the scene and witnessed Defendant Hoguet's use of force, threats, and unlawful arrest of Plaintiff.

124. These Defendants, acting under color of law, had a realistic opportunity to intervene and prevent or mitigate the constitutional violations committed by Hoguet, including Plaintiff's unlawful seizure, excessive force, and wrongful arrest.

125. Despite this opportunity, these Defendants failed to act to stop or limit the misconduct, despite being under a clearly established legal duty to intervene in the unlawful use of force or violations of civil rights by fellow officers.

126. Their failure to intervene allowed the violations to proceed unchecked and caused Plaintiff to suffer avoidable harm, including loss of liberty, fear, humiliation, and emotional distress.

127. These Defendants acted with deliberate indifference to Plaintiff's constitutional rights.

128. As a proximate and direct result of the Defendants' failure to intervene, Plaintiff suffered the constitutional violations set forth above, along with related injuries and damages.

129. If Plaintiff prevails, she is entitled to recover attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Hart prays for judgment against Defendants Reel and Hall for nominal damages, actual damages in an amount that is fair and just, punitive damages, attorney's fees, and costs, and for such other relief as this Court deems just and proper.

### COUNT 9

***MONELL* CLAIM FOR UNCONSTITUTIONAL POLICIES, CUSTOMS, PRACTICES, AND FAILURE TO TRAIN OR SUPERVISE IN VIOLATION OF THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS, COGNIZABLE PURSUANT TO 42 U.S.C. § 1983**
*Against Defendant Village of Caseyville*

130. The constitutional violations committed against Plaintiff by Caseyville police officers occurred as a direct result of the Village of Caseyville's longstanding and widespread customs, practices, and policies.

131. These policies and practices include:

a. retaliating against individuals who observe or record police activity;

b. arresting individuals under vague or fabricated claims of "obstruction" or "disorderly conduct" without probable cause;

c. conducting warrantless vehicle searches and seizures; and

d. using force unnecessarily against non-threatening civilians.

132. The Village also has a policy, custom, or longstanding failure to train, supervise, and discipline its officers regarding the limits of lawful arrest, the right to record police, the use of force, and the prohibition against retaliation.

133. These unconstitutional policies and failures to train were so widespread and persistent as to constitute the moving force behind the violations of Plaintiff's constitutional rights.

134. The Village of Caseyville, through its Chief of Police and other officials with policymaking authority, was aware of these unconstitutional practices and failed to take corrective action, thereby exhibiting deliberate indifference.

135. As a direct and proximate result of these customs, policies, and failures to train or supervise, Plaintiff suffered injuries, including unlawful seizure, excessive force, wrongful arrest, emotional distress, financial damages, and a chilling of her constitutional rights.

136. If Plaintiff prevails, she is entitled to recover attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Hart prays for judgment against Defendant Village of Caseyville for actual damages in an amount that is fair and just, attorney's fees and costs, and for such further relief as this Court deems just and proper.

22

**TIMMERMAN LAW LLC**


By: */s/ Mark T. Timmerman*

Mark T. Timmerman, Mo. Bar. No. 70388
818 Lafayette Avenue
St. Louis, Missouri 63104
Tel: (314) 530-5198
Fax: (314) 530-5199
mark@timmermanlawllc.com

*Attorney for Plaintiff Yolander Hart*

23